UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PETER A. ZUNIGA,

        Plaintiff,

    v.

D. BOSEMAN, et al.,

        Defendants.

No.  2:25-cv-01418 SCR P

ORDER

Plaintiff is incarcerated in state prison and is proceeding with this civil rights action pursuant to 42 U.S.C. § 1983 without a lawyer.  Plaintiff's complaint is before the undersigned for screening under 28 U.S.C. § 1915A.

**IN FORMA PAUPERIS**

Plaintiff has requested leave to proceed without paying the full filing fee for this action, under 28 U.S.C. § 1915.  ECF No. 2.  Plaintiff has submitted a declaration showing that he cannot afford to pay the entire filing fee.  See 28 U.S.C. § 1915(a)(2).  Accordingly, plaintiff's motion to proceed in forma pauperis is granted.  This means that plaintiff is allowed to pay the $350.00 filing fee in monthly installments that are taken from the inmate's trust account rather than in one lump sum.  28 U.S.C. §§ 1914(a).  As part of this order, the prison is required to remove an initial partial filing fee from plaintiff's trust account.  See 28 U.S.C. § 1915(b)(1).  A separate order directed to CDCR requires monthly payments of twenty percent of the prior month's income to be

1

taken from plaintiff's trust account.  These payments will be taken until the $350 filing fee is paid in full.  See 28 U.S.C. § 1915(b)(2).

### STATUTORY SCREENING OF PRISONER COMPLAINTS

The court is required to screen complaints brought by prisoners seeking relief against "a governmental entity or officer or employee of a governmental entity."  28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).  A claim is legally frivolous when it lacks an arguable basis either in law or in fact.  Neitzke v. Williams, 490 U.S. 319, 325 (1989).  The court may dismiss a claim as frivolous if it is based on an indisputably meritless legal theory or factual contentions that are baseless.  Neitzke, 490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis.  See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989).

In order to avoid dismissal for failure to state a claim a complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-557 (2007).  In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A claim upon which the court can grant relief has facial plausibility.  Twombly, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.  When considering whether a complaint states a claim, the court must accept the allegations as true, Erickson v. Pardus, 551 U.S. 89, 93-94 (2007), and construe the complaint in the light most favorable to the plaintiff, Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

### PLAINTIFF'S COMPLAINT

The events underlying plaintiff's complaint occurred while he was incarcerated at California State Prison, Solano ("Solano State Prison").  ECF No. 1 at 12.  Plaintiff names seven

2

defendants: (1) D. Boseman, watch commander at Solano State Prison; (2) S. Pickett, correctional officer at Solano State Prison; (3) K. Disibio, correctional officer at Solano State Prison; (4) J. Grigsby, correctional officer at Solano State Prison; (5) S. Prasavd, correctional officer at Solano State Prison; (6) T. Pacheco, correctional officer at Solano State Prison; and (7) G. Calderon, correctional officer at Solano State Prison.  Id. at 3-4.

### I.      Hospital Transport for Broken Foot X-Ray

Plaintiff alleges that on June 18, 2023, he broke his foot at Solano State Prison.  Id. at 12. Upon evaluation, an unnamed California Department of Corrections and Rehabilitation ("CDCR") Medical Training and Technical Assistant ("TTA"), not named as a defendant, determined that plaintiff required x-rays at a hospital and recommended he be transported accordingly.  Id.  Plaintiff alleges that in transferring him to the hospital, defendant Pickett "denied him adequate medical transportation" by supplying a broken wheelchair that was "missing a footrest and back support" despite plaintiff's foot injury.  Id.  When questioned about the wheelchair, defendant Picket allegedly stated that "the facility lacked enough wheelchairs," and "he did not want to risk losing an adequate chair."  Id.

Plaintiff alleges that defendants Disibio and Grigsby, the transport officers on duty, "failed to properly secure plaintiff in both the wheelchair and transport van."  Id.  Coupled with defendant Disibio's "high speed and erratic[]" driving, such failures caused plaintiff to flip back and strike his head against the wheelchair hydraulic system.  Id.  As a result, plaintiff sustained a laceration on his head, which required staples—he was left in a puddle of blood.  Id.  After discovering plaintiff injured and bleeding, defendants Disibio and Grigsby called defendant Boseman for instructions, and defendant Boseman allegedly ordered defendants Disibio and Grigsby to "pick up [plaintiff] and continue transport … without medical attention."  Id. at 13. Defendants Disibio and Grisby allegedly complied with defendant Boseman's orders, "disregarding the severity of [plaintiff's] injuries" and "delay[ing] medical treatment."  Id. Plaintiff alleges that only after he "pleaded for medical assistance did [defendants Disibio and Grigsby] call for help."  Id.  Defendants Disibio and Grigsby also allegedly refused to document the accident scene with photographs.  Id.

**II.    Self-Help Program Strip Search & Participation Denial**

Plaintiff also alleges that he is a "qualified individual with a disability under the ADA and [Rehabilitation Act]." Id.  On December 21, 2023, defendants Calderon, Prasavd, and Pacheco allegedly denied plaintiff access to the Self-Help program by "refusing to accommodate his mobility disability." Id.  Plaintiff alleges that he has been attending the Self-Help program since August of 2023, which is held in a location that requires participants to submit to unclothed body searches. Id. at 14.  Plaintiff further alleges that defendant Prasavd recognized his disability and conducted pat-down searches instead. Id.  However, in November of 2023, defendant Calderon "suddenly began harassing plaintiff, stating, 'you're not special[.]'" Id.  On December 7, 2023, plaintiff presented defendant Calderon with a medical chrono excusing him from strip searches, but defendant Calderon allegedly "coerced plaintiff into reducing his medical chrono" and "forc[ed] [plaintiff] to comply with strip searches or be barred from the Self-Help program." Id.  On December 21, 2023, defendants Pacheco, Prasavd, and Calderson allegedly told plaintiff, "we don't care about your chrono. You're gonna strip search if you want to go to group." Id.  Upon reminding defendant Prasavd that he provided pat-down accommodations for the last three months, defendant Prasavd allegedly stated, "I was wrong for accommodating you. You got to strip search." Id.  Plaintiff alleges that in an attempt to "cover up their retaliation and discrimination, [defendants Pacheco, Prasavd, and Calderon] fabricated documentation falsely claiming plaintiff had a medical lay-in on the program date." Id.

In his request for relief, plaintiff seeks (1) declaratory relief that defendants violated his constitutional rights; (2) an unidentified amount in compensatory and punitive damages, including all legal fees; and (3) injunctive relief requiring CDCR to comply with medical accommodations. Id. at 17.

**LEGAL STANDARDS**

**I.    42 U.S.C. § 1983**

A plaintiff may bring an action under 42 U.S.C. § 1983 to redress violations of "rights, privileges, or immunities secured by the Constitution and [federal] laws" by a person or entity, including a municipality, acting under the color of state law.  42 U.S.C. § 1983.  To state a claim

4

under 42 U.S.C. § 1983, a plaintiff must show that (1) a defendant acting under color of state law (2) deprived plaintiff of rights secured by the Constitution or federal statutes. Benavidez v. County of San Diego, 993 F.3d 1134, 1144 (9th Cir. 2021).

## II.    Linkage

Section 1983 requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978); Rizzo v. Goode, 423 U.S. 362, 370-71 (1976). Plaintiff may demonstrate that connection by alleging facts showing: (1) a defendant's "personal involvement in the constitutional deprivation," or (2) that a defendant set "in motion a series of acts by others" or "knowingly refus[ed] to terminate a series of acts by others, which [the defendant] knew or reasonably should have known would cause others to inflict a constitutional injury." Starr v. Baca, 652 F.3d 1202, 1207-08 (9th Cir. 2011) (quotation marks and citation omitted). In other words, "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted).

## III.    Joinder

A plaintiff may join multiple defendants in one action where "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions and occurrences" and "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). A plaintiff may also join "as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). However, unrelated claims against different defendants must be pursued in separate lawsuits. See George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). In other words, joining more than one claim against the same defendant is permissible, but joining multiple defendants in one complaint is only proper when the claims against them are based on the same facts. This rule is intended "not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to

5

ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)." Id.

### IV. Eighth Amendment Deliberate Indifference to Serious Medical Need

Denial or delay of medical care for a prisoner's serious medical needs may constitute a violation of the prisoner's Eighth and Fourteenth Amendment rights. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). An individual is liable for such a violation only when the individual is deliberately indifferent to a prisoner's serious medical needs. Id.; see Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002); Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000).

In the Ninth Circuit, the test for deliberate indifference consists of two parts. Jett, 439 F.3d at 1096 (citing McGuckin v. Smith, 974 F.2d 1050 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc)). First, the plaintiff must show a "serious medical need" by demonstrating that "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" Id. (citing Estelle, 429 U.S. at 104). "Examples of serious medical needs include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" Lopez, 203 F. 3d at 1131-32 (citing McGuckin, 974 F.2d at 1059-60).

Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. Jett, 439 F.3d at 1096. This second prong is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. Id. Under this standard, the prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but that person "must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). This "subjective approach" focuses only "on what a defendant's mental attitude actually was." Id. at 839. A showing of merely negligent medical care is not enough to establish a constitutional violation.

Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir. 1998) (citing Estelle, 429 U.S. at 105-106).

"[T]o show deliberate indifference, the plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to the plaintiff's health."  Hamby v. Hammond, 821 F.3d 1085, 1092 (9th Cir. 2016) (citation and internal quotation marks omitted). A difference of opinion about the proper course of treatment is not deliberate indifference, nor does a dispute between a prisoner and prison officials over the necessity for or extent of medical treatment amount to a constitutional violation.  See, e.g., Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).  Moreover, as for any § 1983 claim, there must be an actual causal link between the actions of the named defendants and the alleged constitutional deprivation.  See Monell, 436 U.S. at 691–92; May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980).

**V.      Title II of Americans with Disabilities Act ("Title II" or "ADA") & Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act")**

Title II of the ADA and the Rehabilitation Act "both prohibit discrimination on the basis of disability," Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002), and share the same legal standards and analytical framework, see Coons v. Sec'y of U.S. Dep't Treasury, 383 F.3d 879, 884 (9th Cir. 2004); E.R.K. ex rel. R.K. v. Hawaii Dep't of Educ., 728 F.3d 982, 992 (9th Cir. 2013).  Accordingly, ADA and Rehabilitation Act claims are analyzed together.  See Vinson v. Thomas, 288 F.3d 1145, 1152 n.7 (9th Cir. 2002) ("We examine cases construing claims under the ADA, as well as Section 504 of the Rehabilitative Act, because there is no significant difference in the analysis of rights and obligations created by the two Acts."); Pierce v. Cnty. of Orange, 526 F.3d 1190, 1228 n.27 (9th Cir. 2008) (same).

Title II of the ADA provides that individuals with disabilities cannot be "excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity," nor may they be "subjected to discrimination by any such entity."  42 U.S.C. § 12132. Title II's protections extend to incarcerated persons with disabilities in state prisons.

////

7

Pennsylvania Dept. of Corrections v. Yeskey, 524 U.S. 206, 210 (1998); see also Armstrong v. Wilson, 124 F.3d 1019, 1023 (9th Cir. 1997).

A plaintiff must satisfy four elements to prevail on a Title II claim under the ADA:

(1) [He] is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of [his] disability.

O'Guinn v. Lovelock Corr. Ctr., 502 F.3d 1056, 1060 (9th Cir. 2007); see also Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002); Duvall v. County of Kitsap, 260 F.3d 1124 (9th Cir. 2001).

"A disability discrimination claim may be based on 'one of three theories of liability: disparate treatment, disparate impact, or failure to make a reasonable accommodation.'" Payan v. Los Angeles Cmty. College Dist., 11 F.4th 729, 738 (9th Cir. 2021). In contrast to a Title II disparate impact claim, which "is focused on modifying a policy or practice to improve systemic accessibility," a Title II "reasonable accommodation claim is focused on an accommodation based on an individualized request or need[.]" Id. In addition, "[t]o recover monetary damages under Title II of the ADA ... a plaintiff must prove intentional discrimination on the part of the defendant." Duvall, 260 F.3d at 1138.

**VI.    First Amendment Retaliation**

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. Rhodes v. Robinson, 408 F.3d 559 567-68 (9th Cir. 2005) (citations omitted). Filing an inmate grievance is a protected action under the First Amendment. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).

////

////

8

**DISCUSSION**

I.    **Claims Arising From Hospital Transport for Broken Foot X-Ray**

A.  **Eighth Amendment Medical Indifference (Pickett, Disibio & Grigsby)**

The undersigned finds that plaintiff has stated an adequate Eighth Amendment claim for deliberate indifference to serious medical need against defendants Pickett, Disibio, and Grigsby.

With respect to defendant Pickett, plaintiff has plausibly established both the existence of a serious medical need and defendant Picket's intentional denial of appropriate medical assistance.  Plaintiff alleges that he was evaluated by a CDCR medical TTA, who determined plaintiff would need x-rays for a possible broken foot.  ECF No. 1 at 12.  Plaintiff's foot injury constitutes a serious medical need.  See Lopez, 203 F.3d at 1131-32 (explaining that serious medical needs include injuries "important and worthy of comment or treatment").  Plaintiff further alleges that defendant Pickett "denied [him] adequate medical transportation" by "providing a broken wheelchair missing a footrest and back support despite medical staff's determination" that plaintiff's foot was possibly broken.  Id. at 12.  When questioned, defendant Picket "stated that the facility lacked enough wheelchairs and did not want to risk losing an adequate chair."  Id.  Defendant Pickett's response tends to establish that he knew plaintiff needed a functional wheelchair, that the wheelchair he provided was inadequate, and that he intentionally denied plaintiff a working wheelchair because he didn't want to sacrifice one of the few "adequate chairs" the facility had left.  Moreover, administrative considerations, such as the facility's apparent lack of functional wheelchairs, does not justify defendant Picket's decision to deny plaintiff access to one.  Indeed, "to unnecessarily deny the use of a wheelchair to someone who obviously has an injury, and who lacks mobility without it, would constitute deliberate indifference to a serious medical need."  Lavender v. Lampert, 242 F. Supp. 2d 821, 849 (D. Or. 2002) (citing McGuckin, 974 F.2d at 1059-60).  Accordingly, the undersigned finds that plaintiff has made out a prima facie case for deliberate indifference against defendant Pickett.

With respect to defendants Disibio and Grigsby, plaintiff has also plausibly established both the existence of a serious medical need and defendants' intentional delay of appropriate medical assistance.  During his transport to the hospital, plaintiff flipped backward in his

9

wheelchair and sustained lacerations to his head, which "required staples" and "left him in a puddle of blood." ECF No. 1 at 12. Plaintiff's head injury is sufficient to constitute a serious medical need. See Mayshack v. Gonzales, No. CV 00-01297 MMM (PLA), 2006 WL 8563342, at *11 (C.D. Cal. Nov. 17, 2006) (finding that plaintiff's injuries, including a head laceration that required staples, constituted a serious medical need), rev'd and remanded on other grounds, 437 Fed. App'x 615 (9th Cir. 2011). Upon discovering plaintiff injured and bleeding, defendants Disibio and Grigsby called defendant Boseman for further instructions. ECF No. 1 at 13. That defendants deemed plaintiff's injury severe enough to halt transportation and consider calling for medical assistance is evidence that they appreciated the extreme risk presented by plaintiff's injury. However, instead of calling for medical assistance, defendants "pick[ed] up [plaintiff] and continue[d] transport … without medical attention, [knowingly] disregarding the severity of his injuries." Id. Plaintiff also alleges that defendants did not call for help until after "[he] pleaded for medical assistance." That defendants ultimately did request medical assistance does not absolve them of liability but simply turns characterization of their conduct from a denial to a delay of medical treatment. Accordingly, the undersigned finds that plaintiff has established a prima facie case for deliberate indifference against defendants Disibio and Grigsby.

However, plaintiff has not adequately stated a deliberate indifference claim against defendant Boseman. Plaintiff has not pleaded enough factual content around defendant Disibio's and Grigsby's phone conversation with defendant Boseman to plausibly establish that defendant Boseman was sufficiently aware of plaintiff's conditions to draw the inference that a substantial risk of serious harm existed. See Farmer, 511 U.S. at 837. It is unclear what defendants Disibio and Grigsby relayed to defendant Boseman regarding the severity of plaintiff's injuries. Although defendant Boseman's order to disregard plaintiff's injury and continue transporting him to the hospital appears careless or negligent, the undersigned cannot reasonably infer that defendant Boseman issued the order with the requisite culpable mindset to implicate the Eighth Amendment. Plaintiff will be given leave to amend to allege facts, if he can, establishing that defendant Boseman was sufficiently apprised of plaintiff's condition to appreciate the existence

////

10

of a substantial risk of harm to plaintiff's health and safety and nonetheless ordered defendants Disibio and Grigsby to forgo calling for medical attention.

## II.   Misjoined Defendants

The Title II disability discrimination claims and First Amendment retaliation claims against defendants Calderon, Pacheco and Prasavd are unrelated to the Eighth Amendment deliberate indifference claims against defendants Disibio, Grigsby, and Boseman.  Because there is no question of law or fact common to the defendants across the two incidents, the defendants are not properly joined under Rule 20(a).

"Misjoinder of parties is not a ground for dismissing an action."  Fed. R. Civ. P. 21. Courts generally remedy misjoinder by severing or dismissing without prejudice all but the first named defendant.  Coughlin v. Rogers, 130 F.3d 1348, 1350 (9th Cir. 1997); see also Coal. for a Sustainable Delta v. U.S. Fish & Wildlife Serv., No. 1:09-CV-480 OWW GSA, 2009 WL 3857417, at *8 (E.D. Cal. Nov. 17, 2009) (dismissal of all defendants except the first one named in the caption "is an accepted practice under Rule 21") (citing DirecTV v. Armellino, 216 F.R.D. 240, 241 (E.D.N.Y. 2003))).  As a preliminary matter, the undersigned finds that defendants Pickett, Disibio, Grigsby, and Boseman are all properly joined as the allegations against each of them arise from the same series of transactions or occurrences: the handling of plaintiff's foot injury.  In addition, all those defendants are being sued for medical indifference; therefore, each claim will be analyzed under the same legal standard and framework.  Accordingly, only the allegations against defendants Calderon, Pacheco, and Prasavd regarding plaintiff's participation tin the Self-Help Program will be subject to severance or dismissal.

The undersigned must next determine whether severance or dismissal of defendants Calderon, Pacheco, and Prasavd is appropriate.  In deciding whether to sever or dismiss defendants, courts must conduct a prejudice analysis to consider, inter alia, the "loss of otherwise timely claims if new suits are blocked by statutes of limitations."  Rush v. Sport Chalet, 779 F.3d 973, 975 (9th Cir. 2015) (quoting DirectTV, Inc. v. Leto, 467 F.3d 842, 846–47 (3rd Cir. 2006)). This Court has interpreted the Ninth Circuit's mandate in Rush to mean that "this Court should avoid dismissal of otherwise potentially meritorious claims outside of the limitations period."

11

Griffin v. Gonzales, No. 1:11-CV-0210 AWI, 2015 WL 1820899, at *2 (E.D. Cal. Apr. 15, 2015) (citing Rush, 779 F.3d at 975).

For § 1983 actions, this Court applies California's "statute of limitations for personal injury actions, along with the forum state's law regarding tolling, including equitable tolling, except to the extent any of these laws is inconsistent with federal law." Jones v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004); see also Azer v. Connell, 306 F.3d 930, 935-36 (9th Cir. 2002). "California's statute of limitations for personal injury claims is two years." Butler v. Nat'l Cmty. Renaissance of Cal., 766 F.3d 1191, 1198 (9th Cir. 2014); Cal. Civ. Proc. Code § 335.1.

The limitations period is statutorily tolled for a person who is, "at the time the cause of action accrued, imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than for life," and "the time of that disability is not a part of the time limited for the commencement of the action, not to exceed two years." Cal. Civ. Proc. Code § 352.1(a); see Johnson v. State of Cal., 207 F.3d 650, 654 (9th Cir. 2000). Thus, a prisoner serving a term less than life in California may have four years to file a federal § 1983 claim. See Cato v. Darst, No. 2:17-cv-1873 TLN EFB P, 2019 WL 2249636, at *2 (E.D. Cal. May 23, 2019).

The undersigned takes judicial notice of petitioner's California Incarcerated Records and Information Search (CIRIS) page reflecting that he is eligible for parole in May 2028.[1] See https://ciris.mt.cdcr.ca.gov/. Therefore, plaintiff is incarcerated for a term of less than life and qualifies for tolling under § 352.1(a). Because plaintiff's Title II and retaliation claims accrued in December 2023, ECF No. 1 at 13-14, they are still within the applicable, four-year limitations period, and plaintiff he will not be prejudiced by the dismissal of defendants Calderon, Pacheco, and Prasavd from this action. Accordingly, defendants Calderon, Pacheco, and Prasavd should be dismissed from this action pursuant to Rule 21. Plaintiff is advised that he may pursue his Title II

---

[1] The Court may take judicial notice of public information stored on the CIRIS website. See In re Yahoo Mail Litig., 7 F. Supp. 3d. 1016, 1024 (N.D. Cal. 2014) (court may take judicial notice of information on "publicly accessible websites" not subject to reasonable dispute); Disabled Rights Action Committee v. Las Vegas Events, Inc., 375 F.2d 861, 866 n. 1 (9th Cir. 2004) (courts "may take judicial notice of records of state agencies and other undisputed matters of public record.").

disability discrimination and First Amendment retaliation claims against these defendants in a separate, timely filed action.

### OPTIONS FROM WHICH PLAINTIFF MUST CHOOSE

After conducting the screening required by 28 U.S.C. § 1915A(a), the Court finds that plaintiff has adequately stated an Eighth Amendment deliberate indifference claim against defendants Pickett, Disibio, Grigsby. However, plaintiff has not stated an adequate deliberate indifference claim against defendant Boseman. In addition, defendants Calderon, Pacheco, and Prasavd are improperly joined in this lawsuit and the claims against them may not proceed.

Based on the Court's screening, plaintiff has a choice to make. After selection an option from the two options listed below, plaintiff must return the attached Notice of Election form to the court within thirty (30) days from the date of this order.

**I.     Option 1**

Plaintiff chooses to proceed immediately with the Eighth Amendment deliberate indifference claims against defendants Pickett, Disibio, and Grigsby. By choosing this option, plaintiff will be agreeing to voluntarily dismiss the remaining defendants (Calderon, Pacheco, and Prasavd) and the Eighth Amendment deliberate indifference claim against defendant Boseman. If plaintiff chooses this option, the Court will proceed to immediately serve the complaint and order a response from defendants Pickett, Disibio, and Grigsby. Plaintiff may pursue his Title II disability discrimination and First Amendment retaliation claims against defendants Calderon, Pacheco, and Prasavd in a separate, timely filed action.

**II.     Option 2**

Plaintiff chooses to file an amended complaint to fix the problems described above against defendant Boseman. If plaintiff chooses this option, the court will set a deadline in a subsequent order to give plaintiff time to file an amended complaint.

### LEGAL STANDARDS GOVERNING AMENDED COMPLAINTS

If plaintiff chooses to file an amended complaint, he must demonstrate how the conditions about which he complains resulted in a deprivation of his constitutional rights. Rizzo, 423 U.S. at 370-71. Also, the complaint must specifically identify how each named defendant is involved.

13

Arnold v. Int'l Bus. Machs. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981).  There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation.  Id.; Johnson, 588 F.2d at 743.  Furthermore, "[v]ague and conclusory allegations of official participation in civil rights violations are not sufficient."  Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (citations omitted).

Plaintiff is also informed that the court cannot refer to a prior pleading in order to make his amended complaint complete.  See Local Rule 220.  This is because, as a general rule, an amended complaint replaces the prior complaint.  Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967) (citations omitted), overruled in part by Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012).  Therefore, in an amended complaint, every claim and every defendant must be included.

**CONCLUSION**

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's request for leave to proceed in forma pauperis (ECF No. 2) is GRANTED.

2. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action.  Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1).  All fees shall be collected and paid in accordance with this court's order to the appropriate agency filed concurrently herewith.

3. Plaintiff's Eighth Amendment deliberate indifference claim against defendant Boseman does not state a claim for which relief can be granted.  In addition, defendants Calderon, Pacheco, and Prasavd are improperly joined to the present suit.

4. Plaintiff has the option to proceed immediately on his Eighth Amendment deliberate indifference claims against defendants Pickett, Disibio, and Grigsby, or to file an amended complaint.

5. Within thirty (30) days from the date of this order, plaintiff shall complete and return the attached Notice of Election form notifying the court whether he wants to proceed on the screened complaint or whether he wants to file an amended complaint.

6. If plaintiff does not return the form, the court will assume that he is choosing to proceed on the complaint as screened and will recommend dismissal of the remaining defendants

14

(Calderon, Pacheco, and Prasavd) and the Eighth Amendment deliberate indifference claim against defendant Boseman without prejudice.

DATED: May 1, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER A. ZUNIGA, | No.  2:25-cv-01418-SCR P |
| Plaintiff, | |
| v. | NOTICE OF ELECTION |
| D. BOSEMAN et al., | |
| Defendants. | |

Check one:

_____ Plaintiff wants to proceed immediately on his Eighth Amendment deliberate indifference claims against defendants Pickett, Disibio, and Grigsby.  Plaintiff understands that by choosing this option, the remaining defendants (Calderon, Pacheco, and Prasavd) and the Eighth Amendment deliberate indifference claim against defendant Boseman will be voluntarily dismissed without prejudice pursuant to Federal Rule of Civil Procedure 41(a).

_____ Plaintiff wants time to file an amended complaint.

DATED:_____                    _____
                                                Peter A. Zuniga
                                                Plaintiff pro se

1